Morning, your honors. John Kauffman for Mr. O'Donnell, the appellant in this case. Let me thank the court for allowing me to appear and participate in an oral argument. And because these ten minutes often flash by and defy the laws of physics and time, let me ask if there's any particular subject among the three claims that I've raised that has interest in the panel that you would like me to discuss. We've read your briefs, so what would you like to highlight for us today? Well, I think I'd like to highlight the hearing itself and my complaints about the due process violations that occurred at the hearing. We got a petition to revoke the supervised release of Mr. O'Donnell. The allegations were between January of 2008 and April of 2010, a period of 28 months Mr. O'Donnell had impermissible contact with minor children. When faced with these large time periods, we made an effort to narrow the scope of the government's challenge or the government's position on just exactly where and when this contact occurred in order to prepare an adequate defense at his hearing. We sought discovery. We sought Brady material. We sought, even when we did receive some partial discovery from the government, we sought information about who they were going to rely upon at the hearing when they went when we went forward with the hearing. I'm going to say, may I just ask a clarification, because I'm totally sympathetic to this argument of showing up and feeling like you're ambushed. But then the question is whether there was any prejudice. And I don't think that a continuance or some other remedy was asked for, and then there was the cross-examination of the witness. So then my question is how did this inure ultimately to your client's detriment? It came down to one day, one evening out of a total of almost 800 days. So I think the prejudice is how do you adequately defend for one day out of 800? Then at the hearing, we have, when they give us some material to prepare, they call a surprise witness. And the record clearly reflects that we objected. The prejudice is they got those photographs in regarding the one night when allegedly when contact or proximity took place. That's the prejudice. They got those photographs in. The court said that you had a continuance if you had asked for that or the judge said, look, we're not having the hearing today. We'll have it in a week. Are you saying that the photographs wouldn't have come in? The photographs would not have come in without the witness. The witness provided the foundation. So if the court is asking me after a 30-day witness, could the government have done it correctly? Yes, the government could have done it correctly, and after 30 days, those pictures would have come in. But the hearing was scheduled on a particular date. We were prepared to go forward on that particular date. We were prepared to defend on that particular date, and that's where the prejudice inured. So let's play this out. Let's say you get a new hearing. They put on the same witnesses, the same photographs, same result, right? I mean, is there something that's not inevitable about this? Yeah. If you take a look at it, the whole backdrop is they put on a probation officer to testify, to provide the foundation in the backdrop. The probation officer has no personal information. We object strenuously to the probation officer coming in and testifying about matters. There's no showing that the witnesses are not available and cannot come forward and testify themselves. Here's a prime example. The probation officer testifies almost exclusively on the basis of the depositions from the divorce case of the girlfriend, and that's where the information about the contact comes forward. Yet the court then says we're not going to admit these depositions, we're not going to consider the affidavits, but lets them come through through the probation officer, and that's the prejudice there. So could I ask you then what would be the remedy if we agree with you? The remedy would either be to send it back or to, with the instruction from the district court, to either, one, do it over again, or the remedy would be just to tell them that they had insufficient evidence to go forward and reverse the recommendations of the magistrate and the district court. But if they do it over again, basically your client didn't have any defense as far as I can tell. I mean, this was a Christmas celebration, not exactly on Christmas, but a Christmas celebration. The brother of the former husband is there, the children are there, and if we didn't have the order of no contact, of course your client is behaving perfectly appropriately. I mean, there's just opening presents and high-fiving or whatever. No, there's no allegation of misconduct in the ordinary sense. But this is irrefutable evidence, or at least you've not been able to refute it. He was there, here are the pictures, end of story. Well, Your Honor, that's an excellent segue to my next point about this Exhibit 2 that was admitted that gives the definition and the outline of what contact is. The testimony of the officer is proximity is permitted, but contact is not. And then they give this exhibit that the probation department has no, absolute no authority to present to Mr. O'Donnell, in which they try to define and interpret the rulings or the statements of the court. Yes, he was in proximity of the children. Yes, he was there. Yes, he engaged them. True. We're not disputing that. True. And I think I want to make clear that, absent the order, his contact, as described, is entirely innocent. That's correct. Yeah. And the offense goes to 2005, and there is no, any supervening conduct, or contact that is complained about until that Christmas party in 2010. And he finds himself now segueing into the first issues about the reasonableness of the terms. You know, you get these guys on supervision, and he's on the low level of sex offender Internet crime. He's not covered by the Walsh Act. He can't even register in the State of Arizona because there's no, there's no crime for him to register in the State of Arizona. And for five years, six years, seven years, there is no segue for him to get back into the community. He's not allowed a job. He's not allowed around children. The last three years of his supervised release, he's seen twice by his probation officer. And then he goes to a Christmas party with his girlfriend and has contact or proximity with the children. Yeah. Let me save my minute and one, my 15 seconds. Very good, counsel. Thank you. Come back and see what I can say then. Good morning, Your Honors. I'm Assistant U.S. Attorney Angela Woolridge representing the United States in this matter. You'll have to pull your microphone just a tad closer. Thank you. That's good. Thank you, sir. First of all, the district court did not abuse its discretion in this case. All of the conditions of the defendant's supervised release are reasonable as either related to the defendant's offense or the goals of deterrence protecting the public and the rehabilitation of the defendant or both. Because defense counsel did not touch upon this issue this morning, I won't go into specific detail with regard to all of the conditions that the defendant complains of, but they are all reasonably related to the goals of supervised release and there is no substantial unreasonableness with regard to any of these conditions. Specifically with regard to the revocation hearing in this case, as this Court has found in Bagley and Davenport as well as a number of other cases, there is no violation where the defense is free to cross-examine the witnesses called against them, and certainly they had this opportunity in this case with regard to Mr. Hafner, the individual who laid foundations for the photograph. First, the defense had been on notice with regard to the photographs that those had been disclosed to the defense from the onset of the violation proceedings in this case, and the defense was aware, despite the range of dates that was alleged in the petition to revoke probation, was aware that the government was specifically referring to and would proceed with regard to the holiday party that happened in the January following Christmas, the January of 2010. So the defense was provided full disclosure to the nature of the violation and when that violation occurred. With regard to the witness that the defense complains of, as the defense counsel points out, the purpose of that witness was to lay foundation of the photographs. Those are photographs of which the defendant was aware. In fact, as the magistrate judge and the district court pointed out, the defense clearly had knowledge of what exactly those violations were because the defense was able to argue about that specific occasion, that holiday party, and was clearly aware that that was the theory that the government would be relying upon in the violation hearing. Certainly the photographs were important in this case. As the court pointed out, they're irrefutable evidence of the defense violation. And there was no prejudice to the defense because, again, the defense was aware of those photographs. Despite the way in which the government admitted those photographs, the defense never sought a continuance, even upon learning that Mr. And as the court pointed out this morning, had a continuance been granted, we would have arrived at the same result. So there certainly was no prejudice to the defense. I would also point out, again, that the defense had the opportunity to cross-examine this witness and chose not to cross-examine regarding the photographs or any issues of foundation for the photographs, but simply attempted to use that opportunity to try to disparage that witness's wife. With regard to the definition of contact that the defense complains about in the supervised release condition, that he not have contact with children, I would first point out that while the contact in this case may not have been the cause for any criminal charges or violations, despite the court order that he not have contact with children without prior permission or approval of his probation officer, given the defendant's offense, that no-contact order, that no-contact provision was certainly critical in protecting the public and rehabilitating the defendant. And such an order has been upheld in several cases by this court. It also provided for the discretion of the probation officer. In fact, exceptions had been made to not only allow the defendant to have contact with his own son, but also to attend school-related activities with his son where he would have likely had contact with other minors as well. But was there an exception to the order for the son? I didn't see that the son was covered in the order. Your Honor, the son is covered in the order. In fact, there's a specific provision that he not have contact with children except for his own son without permission. That's what I mean. I think the exception was built into the order. It was not an exception granted by the probation officer. That's correct. But there was a provision of that order that allowed for prior approval by the probation officer. But that's what I'm referring to, is to say this was not because the probation officer let him have contact with the son. The order itself did. Actually, Your Honor, the history goes back to after the first violation. Initially, upon his first judgment and conviction, there was not a provision for the son. However, while he was on supervised release in the first occasion, he did petition the court and the probation officer for that, and it was modified. So the order was modified. I've got a slightly different question. And I think under Riordan, the order that you've got restricting computer use is permissible. So I don't think Riordan says you're wrong. On the other hand, I'm somewhat sympathetic to the argument by the defendant here, which is not going to get out from under the violation he's got. But times are a little different from even 2003, when Riordan was decided. He can't, under this order, be at a computer that has any connection to the Internet, which means he can't do email. I mean, it so seriously limits his employment options. And here we have a relatively educated man. And at the same time, you're supervising his financial circumstances because, according to your own argument, and I understand it, he gets stressed when he doesn't have any money. Well, your restrictions on access to computer are one of the things that's preventing him from getting any money. I wonder if, and I'm not saying that Riordan says you have to do something else, but whether there would be a way in which some access to computer for him would be allowed in these cases without compromising the legitimate goals of the United States. And, Your Honor, I believe that the condition provides for that, because it does provide for, again, prior approval of the probation officer and use of monitoring devices. So I would submit. And I gather from the record, it's not entirely clear to me, but I gather he's made some requests that have been denied. It's not precisely clear to me what those requests have been and so on, but. And, Your Honor, I don't believe that he has made any such requests. Okay. And certainly, if he has, that has not been the subject of any court proceedings or any. And please don't mistake me. I'm not saying I'm about to get out from under Riordan in this case. I mean, Riordan's there. It is. And, Your Honor, I would submit that certainly that condition is necessary, given his offense and the fact that his offense involved the Internet as well. But to address Your Honor's concerns. But there is software you can put on, required to put on computers that would provide more protection than it would even in 2003. That's correct, Your Honor. And in that capacity, the defense can then seek employment that requires the use of computers and even the use of the Internet, so long as probation is made aware and can install that software to ensure that when he's at that occupation, he's using that computer and that Internet for legitimate business purposes. Well, if you're at home, that's the problem, is that, you know, you don't know the opportunity for employment. Generally, you can't get callbacks. People do things by e-mail now that they would normally have done by phone before. So it is a different world. That's correct. But I think that with the software that's out there, he can then be given those opportunities, so long as probation is made aware and then has the opportunity to monitor that to make sure he's not engaging in behavior that may constitute violations, constitute further criminal activity and endanger the public by, as evidenced by his original offense. Your Honors, unless there are any other conditions or concerns that the Court has, I would submit that the – all of the conditions are reasonable in that they do allow for that discretion of the probation officer, which has been provided, I think, in a great deal whenever requested by the defense, that there were no due process violations at the hearing and certainly no prejudice to the defendant, and that the definition of contact and the supervised release condition involving contact was clear to the defense, especially as evidenced by the fact that he was dishonest with his probation officer when confronted about that contact. So he clearly knew what the contact was and what was in violation because he took steps to cover up that violation from his probation officer. Was that the real problem here? I mean, if he'd been honest with the probation officer, do you think there's a reasonable possibility that he wouldn't have been charged? I certainly can't look into the mind of the probation officer, but looking at the fact that the probation officer was reasonable in allowing the defendant, for instance, to go to his son's school with his son and attend activities where there were other children, had, I believe, had the probation officer had the opportunity to know about that contact and to monitor it, to follow up with the adults present, to make sure there was nothing inappropriate going on, because that's the real concern, to having knowledge of these possibilities for contact and making sure that the contact doesn't arise to a new violation, doesn't involve, you know, some concern about the safety of children and safety of the public. That's why it's necessary to have that communication, though, and to have probation to be informed of these contacts, to make sure that the defendant is not falling back into the same pattern of criminal activity, such as that he engaged in in this case. Okay. Thank you. Rebuttal. Thank you, Your Honors. Let me just go over some things quickly. The son was not actually permitted to see the son without the approval of the probation officer. The probation officer gave the approval with some difficulty four months after he was released from prison. The permission to go to school occurred in October of 2009, so almost four years after the offense was the first time that he was allowed to be with his son. We made prior requests for the computer. If you'll take a look at documents 60 and 121 of the record, we clearly requested use. Each time the district court denied it, the probation officer made no computer accessible. We put in our pleadings that were amenable to any kind of appropriate device that would monitor it. If maybe it would be a good time for you and the U.S. attorney to sit down following this argument to talk further. We've tried that. Further. Further. That probably would be a good idea, Your Honor. You know, we do not have a good time to make a record. We don't have a good time to make a record. We didn't use the time to tell Mr. Hackner to go to the hospital. We didn't use the time to tell Mr. Hackner to go to the hospital, either.  The case is argued to be submitted for decision.
judges: Thomas, McKeown, Fletcher